IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　　vs.<br><br>JAMES M. PERKINS,<br><br>　　　　　　　Defendant. | 4:17CR3114<br><br>FINDINGS, RECOMMENDATION, AND ORDER |

Defendant James M. Perkins ("Defendant") has moved to suppress all evidence and statements obtained during a vehicle search conducted on August 9, 2017, alleging his Fourth Amendment rights were violated. Defendant has also moved to suppress statements made during the traffic stop at issue based on alleged violations of his Fifth Amendment rights. For the following reasons, Defendant's motion should be denied.

### STATEMENT OF FACTS

After hearing testimony and reviewing the video evidence, the undersigned magistrate judge finds as follows:

In June and July of 2017, while engaged in criminal investigations for the Lincoln Police Department, Officer Daniel Cleveland received intelligence reports regarding methamphetamine sales in Lincoln, Nebraska. On June 5, 2017, Officer Cleveland received a report from a Lincoln police officer, premised on information from a confidential informant of unknown reliability, that Perkins had sold methamphetamine to a confidential informant, and the confidential informant had observed him in possession of a half-ounce of methamphetamine. On July 30,

2017, another confidential informant reported purchasing methamphetamine from Perkins and observing him in possession of additional methamphetamine. Officer Cleveland also received three separate intelligence reports regarding the sale of methamphetamine connected either to the residence at 3925 N. 11th Street in Lincoln, Nebraska or to Nicholas LaFrenz ("LaFrenz"), who resided there. The first two reports were received from or authored by fellow Lincoln police officers. On July 15, 2017, a further report, containing information from a confidential informant, indicated that LaFrenz's purported methamphetamine sales were conducted at the 3925 N. 11th Street residence, and that people frequented the residence for the purpose of purchasing illegal drugs.

On August 9, 2017, while conducting surveillance of the LaFrenz residence, Officer Cleveland observed a 1994 Cadillac Seville parked across the street. He ran the license plate and determined the vehicle was registered to Perkins. Officer Cleveland then observed Perkins exit the LaFrenz residence, enter the Seville, and drive northbound on 11th Street. Officer Cleveland initiated a traffic stop at the intersection of 11th and Vale Streets. Defendant was the driver and sole occupant of the vehicle at the time of the stop. Officer Cleveland approached the vehicle and informed Defendant that he had been stopped for failing to signal his turn at least 100 feet before the intersection, in violation of Neb. Rev. Stat. § 60-6,161.

Officer Cleveland noticed Perkins appeared nervous and was shaking as they interacted. The officer asked about the shaking, but Perkins indicated he was not nervous or otherwise in distress. Officer Cleveland then asked Defendant whether there were illegal drugs or weapons inside his car. Defendant responded that there were not. Officer Cleveland returned to his police vehicle and

completed a warning ticket for failing to properly signal a turn. When Officer Cleveland returned to Perkins' vehicle with the warning ticket, he handed it to Perkins and told Perkins he would like to speak with him further. Perkins exited the vehicle to speak with the officer. Officer Cleveland requested permission to search the vehicle. Perkins denied consent.

Officer Cleveland informed Perkins that he had requested a canine to come to the scene to assist. Officer Cleveland explained that he had reasonable suspicion to believe there were illegal substances in Perkins' vehicle, and Perkins was not free to leave--he would be released only if the canine did not indicate to the odor of a controlled substance in the vehicle.

Between the issuance of the warning citation and the canine's arrival, an additional officer—Officer Gaston—arrived at the scene. Officers Cleveland and Gaston stood near the back of Defendant's vehicle and talked with Perkins while awaiting the canine's arrival. During that discussion, Officer Cleveland asked Perkins about the origin and destination of Perkins' travel. Officer Cleveland asked if Perkins had entered any residence immediately prior to the stop and whether Perkins personally used illegal drugs. Perkins denied entering a residence prior to the stop, but he admitted to occasionally using marijuana and previously using methamphetamine.

A police canine arrived and began a dog sniff of the exterior of Defendant's vehicle. The dog alerted to the presence an illegal substance. Officer Cleveland then began a search of the interior of the vehicle, where he discovered a white pill he believed to be a controlled substance. Officer Gaston, who remained at the scene as backup, confirmed that the pill was hydrocodone, a Schedule II

3

controlled substance. Defendant was placed under arrest and seated in the back of Officer Cleveland's police cruiser.

Officer Cleveland continued searching Perkins' vehicle and discovered a locked safe in the vehicle's trunk. Perkins was unwilling to give the officers the safe's combination and, without prompting, stated his belief that opening the safe was an illegal search and would necessitate a warrant. Officers completed the search over Defendant's objections and discovered approximately 72 grams of methamphetamine concealed within it. Defendant was advised of his Miranda warnings at the search's conclusion. He refused to further speak to the officers at the scene.

## ANALYSIS

I. Fourth Amendment.

Defendant does not dispute that Officer Cleveland had probable cause to initiate the traffic stop. Instead, Defendant contends that after Officer Cleveland issued the traffic warning, he impermissibly extended the stop without reasonable suspicion of other wrongdoing.

The "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]." United States v. Farnell, 701 F.3d 256, 261 (8th Cir. 2012) (quoting Whren v. United States, 517 U.S. 806, 809-10 (1996)). Thus, every automobile stop is subject to "the constitutional imperative that it not be unreasonable under the circumstances." Id.

4

A traffic stop is reasonable so long as the officer "ha[s] probable cause to believe that a traffic violation has occurred." United States v. Vires, 656 F. App'x 266, 271 (8th Cir. 2016) (quoting Whren, 517 U.S. at 810)). But once the purpose of the stop is complete, further detention is unreasonable under the Fourth Amendment, "'unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention.'" United States v. Flores, 474 F.3d 1100, 1103 (8th Cir. 2007) (quoting United States v. Jones, 269 F.3d 919, 925 (8th Cir. 2001)).

A law enforcement officer conducting a traffic stop "may extend the stop and broaden the investigation" if he or she "discovers information leading to reasonable suspicion of an unrelated crime." United States v. Woods, 829 F.3d 675, 679 (8th Cir. 2016), reh'g denied (Dec. 20, 2016) (internal citation omitted). "Reasonable suspicion exists when an officer is aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." United States v. Mosley, 878 F.3d 246, 251 (8th Cir. 2017) (internal quotation omitted).

Reasonable suspicion requires more than a "mere hunch," but it does not necessitate the showing required for probable cause. United States v. Williams, 796 F.3d 951, 957 (8th Cir. 2015) (quoting United States v. Roberts, 787 F.3d 1204, 1209 (8th Cir.2015)). The officer need only possess "some, minimal objective justification for an investigatory stop." United States v. Coleman, 603 F.3d 496, 499–500 (8th Cir. 2010) (citing United States v. Fuse, 391 F.3d 924, 929 (8th Cir.2004)). "[B]oth innocent and criminal acts can create reasonable suspicion." United States v. Juvenile TK, 134 F.3d 899, 903 (8th Cir. 1998) (citing United States v. Sokolow, 490 U.S. 1, 9 (1989)). In determining if reasonable suspicion existed, the court considers "the point of view of trained

5

law enforcement officers based on the totality of the circumstances known to the officers at the relevant time." United States v. Zamora-Lopez, 685 F.3d 787, 790 (8th Cir. 2012) (citing United States v. Stewart, 631 F.3d 453, 457 (8th Cir.2011)).

During the course of the August 9, 2017 traffic stop in question, Officer Cleveland noted that Defendant was continually nervous, shaking and fidgety. In addition, Perkins appeared even more nervous—shaking and visibly sweating—when asked about the presence of illegal drugs in his vehicle. While nervousness alone may not be a sufficient basis for a finding of reasonable suspicion, (Jones, 269 F.3d at 929 (finding that when an officer can only cite a "generic claim of nervousness" the court "may conclude his suspicion is not reasonable"), a suspect's nervousness is a factor when analyzing reasonable suspicion. See, e.g., De La Rosa v. White, 852 F.3d 740, 746 (8th Cir. 2017), reh'g denied (June 5, 2017), cert. denied, 2018 WL 410916 (Jan. 16, 2018); United States v. Fuse, 391 F.3d 924, 929-30 (8th Cir. 2004), cert. denied, 544 U.S. 990 (2005).

In addition to noticing how nervous Perkins appeared, Officer Cleveland was aware of several intelligence reports indicating that the residence at 3925 N. 11th Street was connected to methamphetamine distribution. He also knew at least two separate Lincoln police department reports linked Perkins himself to methamphetamine sales and possession. It is entirely proper for an officer to "rely on information provided by other officers and all the information known to a team of officers involved in the investigation" to justify a finding of reasonable suspicion. Roberts, 787 F.3d at 1210 (quoting United States v. Ortiz–Monroy, 332 F.3d 525, 529 (8th Cir.2003)). Officer Cleveland saw Perkins leave the 3925 N. 11th Street residence immediately before the traffic stop, but when asked

6

about that, Perkins lied about being at residence immediately prior to the stop.

Defendant argues that the police intelligence reports should not be considered, as they come from sources of unknown reliability. But different informants reporting substantially the same information may corroborate each other. United States v. Nieman, 520 F.3d 834, 840 (8th Cir. 2008); see also United States v. Leppert, 408 F.3d 1039, 1041 (8th Cir. 2005) ("information provided by one informant may be corroborated with specific, consistent details provided by a second informant, and . . . the tips of two informants may be reciprocally corroborative, rendering their information enough to support a finding of probable cause"). Even an anonymous tip of unknown reliability may be corroborated by information provided by other informants. See, e.g., United States v. Sidney, 2009 WL 10681046, at *2 (D. Neb. Aug. 6, 2009) (finding similar information from other informants corroborated an anonymous Crime Stoppers tip).

Taking together, 1) Defendant's nervousness when asked about narcotics; 2) Officer Cleveland's firsthand observation of Defendant exiting 3925 N. 11th Street; 3) Perkins' attempt to hide his connection with that residence; and 4) the myriad of Lincoln police intelligence reports involved, the undersigned finds that there was a particularized and objective basis to suspect Perkins was engaged in criminal conduct and to extend the stop to conduct a dog sniff.[1] Defendant's Fourth Amendment rights were not violated.

---

[1] On January 30, 2018, the court held a hearing on Defendant's motion to suppress. (Filing No. 45). After discussion on the record, defense counsel clarified Defendant's position as outlined in his motion and supporting brief: Defendant contests the reasonable suspicion for extension of the stop but he does not contest the reliability of the dog sniff itself or the resultant probable cause to search his vehicle. (Filing No. 51 at CM/ECF p. 76).

7

II.     Fifth Amendment.

Defendant further argues that his Fifth Amendment right against self-incrimination was violated by Officer Cleveland's pre-Miranda questioning while awaiting the canine's arrival. A suspect must be advised of the Miranda warnings prior to any "custodial interrogation." Miranda v. Arizona, 384 U.S. 436, 444-45 (1966). The warnings are necessary "to dispel the compulsion inherent in custodial surroundings" when a suspect is questioned. Id. at 444.

For the purposes of the Miranda warnings, "interrogation" refers to "questioning initiated by law enforcement officers," (Id.), including "words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response." Rhode Island v. Innis, 446 U.S. 291, 302-03 (1980). At the scene, Officer Cleveland asked about Defendant's illicit drug use—including questions specifically targeted at determining which, if any, illegal drugs Defendant used recreationally. He was also questioned regarding his entry into a residence Officer Cleveland knew was connected to suspected drug trafficking. In both instances, the officer knew or should have known that incriminating responses were reasonably likely, elevating the encounter with Defendant to an interrogation within the meaning of Miranda and its progeny. As such, the relevant inquiry is whether Defendant was in custody within the meaning of Miranda at the time of the police questioning.

Typically, a motorist at a traffic stop is not entitled to the "full panoply of protections prescribed by Miranda." Berkemer v. McCarty, 468 U.S. 420, 442 (1984) (emphasis added). However, a traffic encounter may transform into a

custodial setting if the suspect is subjected to "restraints comparable to those associated with formal arrest." Id. at 441.

The Eighth Circuit considers six factors when determining whether a suspect is in custody:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; [and], (6) whether the suspect was placed under arrest at the termination of the questioning.

United States v. Laurita, 821 F.3d 1020, 1024 (8th Cir. 2016) (quoting United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir.1990)). The first three factors, if present, cut against a finding that a police encounter was custodial, while the remaining three cut toward a custodial encounter. United States v. Giboney, 863 F.3d 1022, 1027 (8th Cir. 2017). But, "no one factor is necessarily dispositive." United States v. Galceran, 301 F.3d 927, 930 (8th Cir. 2002) (citing Griffin, 922 F.2d at 1349). The custodial analysis turns on "whether, given the totality of the circumstances, a reasonable person would have felt at liberty to terminate the interrogation and leave or cause the agents to leave." Laurita, 821 F.3d at 1024 (quoting United States v. Vinton, 631 F.3d 476, 481 (8th Cir.2011)).

After handing the warning ticket to Perkins, Officer Cleveland told Defendant to exit his vehicle in order to have a "conversation" with him. The officer did not inform Defendant that he could refuse questioning and did not ask for his consent. (Ex. A at 11:07.22 p.m.). Officer Cleveland explicitly told Defendant that he was "being detained" and that he was "not free to leave." (Ex. A at 11:08.40 p.m.). The absence of these police advisements about the voluntariness of the encounter is an "important indicium of the existence of a custodial setting." Griffin, 922 F.2d at 1350. And here, Officer Cleveland provided no advisement of voluntariness whatsoever. But when asked for consent to search the vehicle, Perkins refused—a fact that cuts against finding Perkins felt compelled to cooperate with the officer's demands or questioning.

Perkins did not possess "unrestrained freedom of movement." Laurita, 821 F.3d at 1024. Throughout the questioning, Perkins stood in a grassy area near the back of his vehicle, flanked by officers who stood between Perkins and his vehicle. Perkins requests for his package of cigarettes and his cellphone were initially denied both. (Ex A. at 11:08:49 p.m.) (cigarettes); (Ex A. at 11:10.50) (cell phone). And although he was later handed his cigarette package, he was told he could not light or smoke a cigarette until after the police canine had conducted the sniff of his vehicle. See Griffin, 922 F.2d at 1354 (reasoning that a suspect's freedom was restrained to degree associated with arrest when accompanied to retrieve a cigarette and warned to stay in the officer's view at all times). Perkins was never given access to his cell phone at the scene. See United States v. Holleman, 743 F.3d 1152, 1160 (8th Cir. 2014) (reasoning that access to a cell phone cuts against a finding of custody).

Perkins was never handcuffed, but handcuffing—or the lack thereof—is not dispositive in a Miranda inquiry. See, e.g., United States v. Carter, 884 F.2d 368,

10

372 (8th Cir. 1989) (suspect not in handcuffs but told to "just stay here" was in custody for Miranda purposes when weighed in light of other present facts). And ultimately, Defendant was placed under arrest at the scene, which is a "very important factor" cutting toward a finding of custody. Galceran, 301 F.3d at 931 (quoting United States v. Sutera, 933 F.2d 641, 647 (8th Cir.1991)).

Officer Cleveland contacted Perkins at the traffic stop and immediately called for a back-up officer for an ostensibly routine, minor traffic incident. But neither officer employed deception or strong arm tactics. United States v. Sanchez, 676 F.3d 627, 631 (8th Cir. 2012) (stating that "assertions that [Defendant] was lying were not coercive interview methods"); see also United States v. Axsom, 289 F.3d 496, 502 (8th Cir. 2002) (finding no strong arm tactics where police "did not adopt a threatening posture…display their weapons, or make a physical show of force during the questioning"). The officers were firm but polite during the encounter.

In weighing the above discussed custodial inquiry, the issue "cannot be resolved merely by counting up the number of factors on each side of the balance and rendering a decision accordingly." United States v. Elzahabi, 557 F.3d 879, 883 (8th Cir. 2009) (quoting United States v. Czichray, 378 F.3d 822, 827–28 (8th Cir.2004)). Ritualistic adherence to judicially created "factors" ignores the nuances that the court ought to consider when determining whether a reasonable person would have considered himself restrained as though under formal arrest. Czichray, 378 F.3d at 827.

Upon considering the totality of the circumstances, the court finds Defendant was not custody at the scene when the officers interrogated him. His

11

Fifth Amendment rights were not violated by the officer's non-custodial questioning at the scene of the traffic stop.

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable Richard G. Kopf, United States District Judge, pursuant to 28 U.S.C. § 636(b), that the motion to suppress filed by the defendant (Filing No. 38) be denied.

The parties are notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

IT IS ORDERED that the jury trial of this case is set to commence before Richard G. Kopf, United States District Judge, in Courtroom 1, United States Courthouse, Lincoln, Nebraska, at 9:00 a.m. on May 7, 2018 or as soon thereafter as the case may be called, for a duration of three (3) trial days. Jury selection will be held at the commencement of trial.

Dated this 4th day of April, 2018.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge